Robert PUGH et al.

v.

James RAINWATER et al.

No. 71–448–Civ–JLK.

United States District Court,
S. D. Florida.

Jan. 3, 1979.

Bruce S. Rogow, Miami, Fla., Bennett H. Brummer, Public Defender, Miami, Fla., for plaintiffs.

George R. Georgieff, Asst. Atty. Gen., State of Florida, Tallahassee, Fla., Stephen V. Rosin, Asst. State Atty., Miami, Fla., for defendants.

## ORDER ON REMAND AND ATTORNEYS FEES

JAMES LAWRENCE KING, District Judge.

In March, 1971, the plaintiffs filed a complaint under Title 42 U.S.C. § 1983 challenging the Florida practice which permitted persons to be held in custody solely upon probable cause determinations made by state attorneys. In their complaint the plaintiffs also questioned the constitutionality of the use of money bail as a condition of release for indigent defendants.

Both issues have had a full and extraordinary life. The probable cause issue was argued twice in the Supreme Court of the United States, which concluded, in a case of first impression, that probable cause must be decided by neutral and detached magistrates, not state attorneys. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The bail question was decided in favor of the plaintiffs by a panel of the Fifth Circuit, *Pugh v. Rainwater*, 557 F.2d 1189 (5th Cir. 1977), but subsequently the bail count of the complaint was ordered dismissed as moot by the full Court in *Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir. 1978) (en banc). In addition to those decisions,

the issues in this case have generated two other Fifth Circuit opinions, *Pugh v. Rainwater*, 511 F.2d 528 (5th Cir. 1975) and *Pugh v. Rainwater,* 483 F.2d 778 (5th Cir. 1973) and four published opinions from this Court. *Pugh v. Rainwater*, 422 F.Supp. 498 (S.D.Fla.1977); *Pugh v. Rainwater*, 355 F.Supp. 1286 (S.D.Fla.1973); *Pugh v. Rainwater*, 336 F.Supp. 490 (S.D.Fla.1972); *Pugh v. Rainwater*, 332 F.Supp. 1107 (S.D. Fla.1971).

Today the Court resolves the matters on remand from both the bail and probable cause issues and addresses the issue of attorneys fees under the Civil Rights Attorney's Fees Awards Act, Title 42 U.S.C. § 1988.

### THE BAIL ISSUE

■ The *en banc* Court of Appeals decision specifically instructed that Count III of the plaintiffs' complaint, the bail count, "be dismissed as moot without costs to either party" *Pugh v. Rainwater*, 572 F.2d 1053 at 1059. Therefore, it is ordered and adjudged that Count III is dismissed without costs to either party. The fee herein set does not include an award for services rendered in connection with this issue.

### THE PROBABLE CAUSE ISSUE

■ Subsequent to the Supreme Court decision declaring unconstitutional the practice of permitting probable cause to be determined by state attorneys, the Fifth Circuit remanded to this Court saying:

> In light of the range of choices which the Supreme Court's opinion suggests as possibly meeting the requirements for the holding of a hearing to determine probable cause, we deem it appropriate to remand this issue to the trial court for its further consideration in light of the opinion of the Court.
>
> *Pugh v. Rainwater,* 511 F.2d 528.

Thereafter this Court conducted hearings and heard argument on whether the Dade County, Florida probable cause determination plan conformed to the *Gerstein v. Pugh*

command of fair and reliable determinations of probable cause by a judicial officer before, or promptly after, arrest. In an opinion reported at 422 F.Supp. 498, this Court concluded that the practices, described at 422 F.Supp. 500, were defective insofar as the affidavits used "do not inform the magistrate of any basis upon which the officer found the witnesses to be credible or their information reliable." *Id.* 422 F.Supp. at 503.

The defendants submitted a proposed procedure for determining probable cause, a copy of which is attached as an Appendix to this Order. In sum, the proposal proposed a new affidavit form, more rigid screening of the affidavits and a training program for police agencies. Counsel for plaintiffs objected to the omission of questions on the affidavit going to credibility and reliability. In response to a Court order of May 20, 1977, adopting the proposed plan with a modification addressing the credibility and reliability concern, the defendants agreed to add the following question to the affidavit:

> Of the witnesses named above, is there any whose demeanor, mental or physical state or nature or testimony raises a *serious* issue as to credibility or reliability?
>
> If so, explain. (Emphasis added)

Counsel for the plaintiffs object to the use of the adjective "serious" on the ground that under *Gerstein v. Pugh*, it is the duty of the magistrate to decide the reliability question. It is contended that if the officer evinces any doubt as to credibility, the magistrate should be put on notice so that he or she can pursue the inquiry to insure that the "fair and reliable" portion of the *Gerstein v. Pugh* test is met.

The Court agrees with that contention. The word "serious" shall be omitted from the proposed addition to the affidavit form. With that proviso the Court approves the procedures submitted for determining probable cause in Dade County, Florida as set forth in the order at 422 F.Supp. 498 and the Appendix to this order.[1]

---

1. In a Status Report, plaintiffs have informed the Court that on January 1, 1979, new proce- dures for determining probable cause will be initiated in Dade County. This order addresses

## THE ATTORNEYS FEE

Plaintiffs' counsel seeks attorneys fees only for the work expended in the probable cause portion of this litigation. The Award of these fees is appropriate pursuant to Title 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act. See *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The issue is one of amount. That issue is to be determined by assessing all the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). See *Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978). Each factor is assessed below.

### (1) *The time and labor required.*

Counsel for the plaintiffs, Bruce S. Rogow, has submitted an affidavit reflecting a total of 615.25 hours expended by him on the probable cause portion of this case from its inception. That time includes all of the litigation in this Court, the various appellate proceedings including two oral arguments in the Supreme Court, the submission of three briefs to the Supreme Court and the proceedings on remand. All of the time reflected in counsel's affidavit is for attorney's work. None of the hours represent non-legal work, investigation work or clerical duties. Without doubt, the time claimed represents a reasonable and responsible expenditure of effort for a case of this magnitude and the court so finds.

### (2) *The novelty and difficulty of the questions.*

This case made "new law". It was a novel and difficult case from a substantive and procedural viewpoint. Thorny questions of mootness, abstention, comity and exhaustion were successfully overcome by the plaintiffs in order to gain resolution of their substantive claim that probable cause determinations must be made by a neutral and detached magistrate, not a prosecuting attorney. *Gerstein v. Pugh*, 420 U.S. 103, 107–111, notes 6, 9, 10, 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

The number of written opinions on the probable cause issue, the Supreme Court reargument, the invitation to the Solicitor General of the United States to appear as amicus curiae, all reflect the novelty and difficulty involved in this litigation and requires counsel to be "appropriately compensated for accepting the challenge." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718.

### (3) *The skill requisite to perform the legal service promptly.*

The Court has observed the work product, preparation and general ability of counsel for nearly eight years since this case commenced. He is a very capable and talented lawyer who has handled this case in the finest lawyer-like manner. This is perhaps the most significant case to come out of the Southern District Court in the last decade. Mr. Rogow's representation of his class client was extraordinary.

### (4) *The preclusion of other employment.*

At the inception of this case counsel was employed by Legal Services of Greater Miami. However, for the past six years counsel has been a law professor maintaining a limited civil rights practice. As a result, the handling of this case has not resulted in any preclusion of any other employment for him. The Court notes that Mr. Rogow, recognizing the fact that a portion of his time was expended while he was employed by a federally funded legal services program, has stated "A portion of any award made to undersigned counsel will be paid to Legal Services of Greater Miami, Inc." Plaintiff's Response to State's Submission; Supporting Materials to Motion for Attorney's Fees and Memorandum, p. 3.

### (5) *The customary fee.*

Two experienced civil rights lawyers in the Southern District of Florida have sub-

only the practices and procedures previously submitted. The plaintiffs agree that any challenge to the new procedures, if they are defi-

cient, should be maintained by newly affected plaintiffs.

mitted affidavits in support of counsel's attorney fee request. One affidavit suggest $135 per hour as a reasonable fee in this case and the other suggests $125 per hour. In *International Society for Krishna Consciousness, Inc. v. Hayes*, 438 F.Supp. 1077 (S.D.Fla.1977) this Court entered an order subsequent to the published opinion, awarding plaintiff's counsel in that case a fee of $100 per hour for a total of 31.25 hours. In *Abrams v. Reno*, 452 F.Supp. 1166 (S.D.Fla.1978) another judge in this district awarded a fee at the rate of approximately $80 per hour in a civil rights case.

Considering the affidavits, the recent awards and the knowledge this Court has of the customary fees in this community, it is my opinion that $90 to $100 per hour is the customary fee for legal work of the nature and quality performed in this case.

(6) *Whether the fee is fixed or contingent.*

There was neither a fixed or contingent fee arrangement in this case, therefore that criterion is not applicable in determining the fee award here.

(7) *Time limitations imposed by the client or the circumstances.*

Since the litigation in this case has proceeded at a regular pace and has not required emergency handling, the priority time premium is not relevant to this attorney's fee.

(8) *The amount involved and the results obtained.*

No monetary sum was sought by the plaintiffs. Therefore the focus under this factor must be on the other results obtained.

The Supreme Court of Florida has acknowledged the role which *Pugh v. Rainwater* played in revamping Florida's criminal procedure rules to safeguard the rights of arrested persons. *State Department of Health and Rehabilitative Services v. Golden*, 350 So.2d 344, 347 n. 10 (Fla.1977). At one stage of this case it was estimated that as a result of the magistrate system

prompted by the original Court order, "felony caseloads have been reduced by 20 to 25 percent, with corresponding savings to the taxpayers of Dade County." *Pugh v. Rainwater*, 355 F.Supp. 1286, 1291 (S.D.Fla. 1973). That evidence supported the prediction that:

The expense of maintaining a jail, with many persons who would never be there in the first instance if their case had been reviewed by a judge in an effective committing magistrate system, will be substantially less than its present cost and will certainly be a tangible benefit to all citizens of this community.

*Pugh v. Rainwater*, 332 F.Supp. 1107 at 1114.

The protection derived from the constitutional guarantee announced in *Gerstein v. Pugh* also represents a benefit to arrested persons which must be measured in terms of their safeguarded liberty.

By any yardstick, the results obtained in this case were significant, substantial and represented the vindication of an important constitutional principle.

(9) *The experiences, reputation and ability of the counsel.*

The legal community of this District holds Mr. Rogow in high esteem as an experienced civil rights advocate. He has an excellent reputation in his field and is entitled to a fee commensurate with his expertise.

(10) *The undesirability of the case.*

This case was not undesirable from the standpoint of engendering hostility from the community. But the fact that the system of prosecutional determinations of probable cause had gone so long unchallenged in Florida reflects the importance of the task assumed by counsel and the need to fairly compensate that effort.

(11) *The nature and length of the professional relationship with the client.*

Since there was no ongoing professional relationship between counsel and his clients,

other than their involvement in this case, that criterion is not applicable here.

### (12) Awards in similar cases.

In discussing customary fees, awards in other civil rights actions in this locale have been noted. Nationwide, the range of attorney's fees in civil rights cases run a wide gamut. In *Beazer v. New York Transit Authority*, 558 F.2d 97, 100 (2d Cir. 1977) the Court, advocating "the same (fee award) standards as in other complex federal litigation" approved an award under Title 42 U.S.C. § 1988 of $310,000 to plaintiffs attorneys who successfully enjoined the Transit Authority from continuing its refusal to employ former heroin addicts.[2]

In *Copeland v. Marshall*, 193 U.S.App. D.C. ——, 594 F.2d 244 (1978) Judge Wilkey rejected a major Washington law firm's claim for reimbursement for 3,062 hours of attorneys time at a cost of over $200,000 in a Title VII case, in an opinion openly critical of the firm's billing practices for the case.

The Fifth Circuit has approved fees of $65 and $75 per hour under § 1988 after scrutinizing the hours and suggested rate of two attorneys seeking reasonable compensation. *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977).

■ Consequently, examining awards in similar cases, while instructive, is not dispositive. This Court finds most compelling the caveats contained in *Johnson v. Georgia Highway Express, Inc., supra*, that attorneys fees should be awarded with an eye toward fairness and to "enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition . . . ." 488 F.2d at 719.

■ In this case the Court is impressed with both the reasonableness of the time claimed by counsel and his suggested hourly rate of $90 per hour. This is not a case in which counsel is seeking to abuse the Civil Rights Attorney's Fees Awards Act by inflating his time claims nor his hourly rate claims. His affidavit reflects hours spent by a lawyer doing lawyer's work. He has performed high quality work and achieved an important result. Considering all of the factors enumerated above, it is the opinion of this Court that a fee computed at the rate of $90.00 per hour is fair and equitable for each of the 615.25 hours expended by counsel and the sum of $55,372.50 is awarded as attorney's fees to Bruce S. Rogow.

■ The plaintiffs' probable cause case was directed at the State Attorney for Dade County, Florida. But it is clear that the State Attorney was merely carrying out the then applicable Florida law which permitted the prosecutor to be the arbiter of probable cause. The Florida Attorney General's office has assisted the defense of the State Attorney because, for practical purposes, this suit was brought against the State. *Hutto v. Finney*, 437 U.S. 678 at 699, 98 S.Ct. 2565 at 2578, 57 L.Ed.2d 522 authorized payment of attorney's fees by the state in such a situation. Therefore, the attorneys fees award shall be paid by the State of Florida. See also *Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978).

---

2. Certiorari has been granted in *Beazer*, apparently on the substantive question, not the attorneys' fee issue. See 438 U.S. 904, 98 S.Ct. 3121, 57 L.Ed.2d 1146

APPENDIX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 71-448-Civ-JLK

ROBERT PUGH, et al.    )
        Plaintiffs,)
             )
     -vs-       )
             )
JAMES RAINWATER, et al. )
        Defendants,)

DEFENDANTS' PROPOSED PROCEDURE
FOR DETERMINATION OF PROBABLE
CAUSE

In the Order of November 16th, 1976, this Court called for the development and submission of a written procedure for the determination of probable cause to detain consistent with the requirements of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

In response to the Court's Order, representatives of the defendants and the concerned public agencies have held a number of conferences in an effort to come up with a plan which will comply with this Court's Order.

It is suggested that the present procedures employed in Dade County can be improved as described herein in order to insure consistent compliance with the requirements of *Gerstein v. Pugh.*

1. *A New Affidavit Form.* A copy of the new form is attached. It advises the police officer—affiant of the requirements of setting forth the operative facts and the names of the witnesses who can testify to them in order for the magistrate to independently determine whether the probable cause exists to hold the defendant for trial.

In addition, the new form provides more space to enable the officer—affiant to provide greater details of the factual basis for the defendant's arrest.

It also advises the officer—affiant that the failure to do so will result in the officer being called before the magistrate within 72 hours of the defendant's arrest to give sworn testimony in order for the magistrate to determine whether probable cause to detain the defendant does exist.

2. *More Rigid Screening Of The Affidavits.* The judges of the County Court In And For Dade County presently assigned to the Magistrate Division are more rigidly scrutinizing the affidavits from which they determine the existence of probable cause. The magistrates say they have already commenced such a procedure and are calling in officer—affiants within the time limits prescribed by Rule 3.131 of the Florida Rules of Criminal Procedure on a consistent basis where their affidavits fail to set forth sufficient operative facts for the magistrate to make a fair and reliable determination. It is respectfully suggested to this Court that, at this stage of the proceedings, "credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." See *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854 at 867, 43 L.Ed.2d 54. In those instances where credibility determinations are crucial, the magistrates will require the officer—affiant to appear before the Court within the time limits prescribed by Rule 3.131 of the Florida Rules of Criminal Procedures in order to make the appropriate inquiries regarding credibility.

3. *Training Program For Police Agencies.* The State Attorney's Office will coop-

erate with the Magistrate Division of the County Court and the concerned police agencies in Dade County in conducting an intensive program to instruct the police officer—affiants of the requirements of *Gerstein v. Pugh*, the nature of the information that must be contained within the affidavit and procedures for supplying this information.

As under the present procedure, the defendants contemplate an additional hearing in many cases before the filing of a formal charging document, but this hearing pertains to screening and is not relevant to the issues raised in *Gerstein v. Pugh*.

The defendants anticipate the procedure proposed in response to this Court's Order can be fully implemented within 45 days of acceptance by this Court.

This proposed procedure is concurred in by the Circuit and County Courts, The Office of the State Attorney, The Office of the Clerk of the Court, The Dade County Corrections and Rehabilitation Department and the major police agencies.

The undersigned hereby certifies that a true copy of the above and foregoing was mailed this 9th day of March, 1977, to Stuart Simon, Bruce S. Rogow, George Georgieff, Peter Nimkoff, Judge Grady Crawford, Judge Gene Williams, Judge John Tanksley, Judge Arthur Winton, Judge Richard Hickey, Judge Bernard Jaffe, Judge Edmund Newbold, Robert Dempsey and Lori Strait.

RICHARD E. GERSTEIN
STATE ATTORNEY
ELEVENTH JUDICIAL CIRCUIT
OF FLORIDA

/s/Edward Carhart
Edward Carhart
Assistant State Attorney

**COUNTY OF DADE**

I swear this statement is correct and true to the best of my knowledge and belief.

_____
Officer's Signature

Dept._____ Ct. ID No._____

Sworn to and subscribed before me, the undersigned authority this _____ day of _____ 19 ____

_____
Deputy of the Court or Notary Public

☐ Dade County  ☐ Other

Arresting Agency _____
(Numeric Code)

**COURT COPY**

☐ Hold for Magistrate's Hearing. Do Not Bond Out. (Officer Must Appear)  ☐ OUT OF COUNTY/STATE WARRANT

114.02-142 REV. JAN. 1974   DETACH IF OTHER THAN ADULT FELONY OFFENDER   Police Case No. _____

**ARREST:**   [ ] Probable Cause     [ ] Capias     [ ] Warrant Issued by Judge

Date _____ Time _____ Location _____

Officer _____ Ct. I.D. No. _____ Dept. _____

**DEFENDANT:**   I.D.S. NO. _____ Jail NO. _____ Police Case NO. _____

P.S.D. Records I.D. No. _____ Municipal P.D. I.D. NO. _____

NAME _____ Date of Birth _____
       (Last)      (First)      (Middle)

[ ] Adult

[ ] Juvenile

ALIAS _____ Local Address _____

Permant Address _____ Sex ____ Race _____

Business Address _____ Hgt. ____ Wt. ____

Phone _____ Soc. Sec. No. _____ Eyes ____ Hair _____

Occ. _____ P.O.B. _____ Scars-Tattoos _____

Co-Defendant's Name _____ / STATUS ☐ AT LARGE ☐ FELONY  ☐ IN CUSTODY ☐ MISDEMEANOR  ☐ JUVENILE
                    (Last)  (First)  (Middle)

Co-Defendant's Name _____ / STATUS ☐ AT LARGE ☐ FELONY  ☐ IN CUSTOFY ☐ MISDEMEANOR  ☐ JUVENILE
                    (Last)  (First)  (Middle)

CHARGES

C 1._____ In Viol. of F.S. _____ CAPIAS/CIT. # _____

H A 2._____ In Viol. of F.S. _____ CAPIAS/CIT. # _____

R 3._____ In Viol. of F.S. _____ CAPIAS/CIT. # _____

G E 4._____ In Viol. of F.S. _____ CAPIAS/CIT. # _____

S 5._____ In Viol. of F.S. _____ CAPIAS/CIT. # _____

_____ In Viol. of Sec. _____ of the code of _____

HOLD FOR OTHER AGENCY:   Agency Requesting _____ Verified By: _____

Comments _____

I hereby certify that I will appear at all court hearings, and furthermore, agree that notice concerning the time, date, and place of all court hearings should be sent to the address below (under my signature). Furthermore, I agree that it is my responsibility to notify the Court (and to obtain proof of such notification) any time that my address changes. I further understand that my failure to follow these requirments may affect my right to a speedy trial.

_____
(DEFENDANT)

_____
(DEFENDANT'S ADDRESS)

**OFFICER SHALL NOT FILL OUT ANYTHING BELOW:**

Date of Preliminary Hearing: _____ Time: _____ Courtroom No.: _____

Public Defender Appointed:   YES ☐   NO ☐

Bind Over   ☐ county court   ☐ circuit court   Continued Date _____

Discharged (Reason in Detail) _____

DETACH IF FELONY OR RELATED CHARGE (EXCEPT JUVENILE) 114.02-142 REV. JAN. 1974

RESIDENT OF:  ☐ FLORIDA

**STATE OF FLORIDA:**  ☐ Juvenile
**COUNTY OF DADE**  ☐ Misdemeanor/Ordinance Violation  ☐ Arrest Form

Arresting Agency _____ (Numeric Code)  ☐ Dade County  ☐ Other

I swear the above statement is correct and true to the best of my knowledge and belief.

_____
Officer's Signature

Dept._____ Ct. ID No._____

Sworn to and subscribed before me, the undersigned authority this _____ day of _____ 19 ____

_____
Deputy of the Court or Notary Public

☐ You must appear in County Court and comply with the instructions on the reverse side hereof.

☐ You need not appear in Court, but must comply with the Instructions on the reverse side hereof.

I promise to appear in said court at said time and place or to pay the fine prescribed for this offense

**COURT COPY**   Police Case No. _____

■■■

■■■

FACTUAL NARRATIVE

INSTRUCTIONS - READ CAREFULLY:

The below affidavit must set forth operative and material facts and the names of the witnesses who can testify to them in order for the magistrate to determine whether probable cause exists. Failure to do so will result in the "lead" officer being called before the magistrate within 72 hours of the arrest to demonstrate probable cause to detain the defendant. (NOTE: State, in as specific detail as possible, all of the facts that cause you to believe that the defendant has committed the offense(s) for which he/she has been arrested. Use names, not pronouns).

I, the undersigned, certify and swear that, to the best of my knowledge and belief, the defendant_____, on the_____ day of _____, 19____, violated the law (as stated on page 1 of this complaint affidavit) based on the following facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Sworn to and Subscribed to before          I swear the above is correct and true
me, the undersigned, on the_____          to the best of my knowledge and belief.
day of_____, 19_____.

NOTARY PUBLIC OR DEPUTY OF COURT            OFFICER'S SIGNATURE

RE: DEFENDANT: _____ Police Case No. _____

FILL OUT IN AS MUCH DETAIL AS POSSIBLE. CHECK ALL APPROPRIATE BOXES. IF WITNESS IS A
POLICE OFFICER, DESCRIBE RELATIONSHIP TO CASE.

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony _____
_____
_____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____
_____
_____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony _____
_____
_____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____
_____
_____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony _____
_____

Name: _____ VICTIM☐ OWNER☐ WITNESS☐ Address: _____ Phone: _____
Synopsis of Testimony: _____
_____